The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. All right, well, good morning everyone. I want to welcome all counsel who are appearing before us. We thank you for being here virtually, and we look forward to hearing all of your arguments this morning. It's a privilege to be sitting with my colleague, Judge Bumate, this week. And Judge Bumate and I would like to say a special thank you and welcome to our good friend, Judge Lasnik, from the Western District of Washington, who is sitting with us by designation. He does this frequently for us. Judge Lasnik, it's great to have you back. Thank you so much. So for counsel who are arguing this morning appellants, please feel free to reserve time for rebuttal. It's up to you to watch the clock. We have three cases that were submitted on the briefs, and we'll turn to our argument calendar this morning. And the first case we have is Quintero v. Ford Motor Company, which is case 25-5883. And we'll be pleased to hear from the appellants. May it please the Court, my name is Cindy Tovisman here on behalf of the appellants. This appeal turns on whether a plaintiff's election of remedy at the time of submitting a proposed judgment that the court directed it to prepare constitutes an abandonment of their implied warranty claim. I think there's no question that there's no abandonment here. This isn't an instance where a party refused to litigate a claim. Quite the contrary, plaintiffs litigated their claim all the way to verdict. They submitted a judgment that embodied that verdict. It stated that they had won on that claim. And the only election would have been essentially a conditional election to take under a different verdict with a higher dollar number. And it's conditional because it really only needed to happen if there was a chance that they could have taken under both. The nature of the election of remedies doctrine is essentially an estoppel principle. The idea is that you meet the other side, you've made the defendant change position in some way that they've been injured. There's no way that Ford was injured in this case. They litigated the claim all the way along, same as we did. Got all the way down to verdict. The act of electing between two different monetary amounts is an election of a claim. It's a choice of a remedy. The idea that that would be an abandonment of a claim, that that would be a knowing relinquishment of the right to recover is sort of absurd. And, frankly, this is one of those cases where you kind of wonder, what would Plaintiff's counsel have done differently all the way along? One question is why was the implied warranty included in the proposed judgment? Because if you were going to elect based on the express warranty claim, why was the implied warranty claim nonetheless in there? Well, if you take a look at the proposed judgment, all the judgment says is what the jury did. It essentially says that we recovered under both. There's nothing wrong with that. And, in fact, a judgment is supposed to embody what the jury did, which is what this judgment said. This judgment said we won verdicts under both. We're only taking under one of them because we couldn't recover both. Didn't say that last part. Conceptually, that's the idea. There's nothing improper about submitting a judgment that embodied both. And, indeed, it was strange for the court to enter a judgment for Ford, the party that had not won a jury verdict. This was a totally kind of garden-variety proposed judgment that stated simply what the jury's verdict had been. There's no election that's binding until we actually recover that amount. And so in an instance like this where, you know, way down the line, J-Mall's granted on one of the claims, there's no adhesion for an election of remedies. Can I ask one question? Go ahead, gentlemen. Speak to me. What do you think is the next step, counsel, if we send it back to the trial court? What does Judge Baratt do next? Well, I think what happens is the disposition from this court would be fairly straightforward. It would be that the trial court erred by entering judgment in favor of Ford on the implied warranty claim. Now, from our perspective, we're done. We've won under the implied warranty claim, and, indeed, after the jury delivered its verdict, we said that from our perspective, we've proved our claim, we've gotten our damage amount, we're done. Now, Ford may well file a motion wherein it seeks an equitable offset against that amount. They've not filed any such motion, but they might. They should be allowed to if they'd like to. They can file a J-Mall motion as to the implied warranty claim. There was no live J-Mall to be filed back when they renewed their 50-D motion because Judge Baratt had already entered judgment in Ford's favor prior to that J-Mall. So there wasn't anything. There was no keys to controversy at that point. So on remand, I would say that Ford would be permitted to do whatever it's going to do now that that claim is now in play again. Including seeking the same relief it got on the express warranty claim. In other words, filing a J-Mall motion, yes. There was another question from the panel? Yes. After the jury verdict, Ford wanted, it seemed like they wanted a bench trial on the offset issue. What would that bench trial look like, and why did the Quinteros refuse to enter that? Well, two things. First of all, the Quinteros didn't refuse to do anything. Nobody said, let's have this bench trial, and Quinteros said, absolutely not, we won't show. Our position was that in order to save the court some trouble, if the express warranty claim was going to be what we were taking under, then maybe the issues weren't worth kind of pursuing at that point in the interest in judicial economy. That's a legal argument. Certainly the court could have said, no, no, I'd like to now continue on and try this. Go ahead, Ford, you can file that motion for an equitable offset. Which, again, is something they hadn't filed at that point. They'd indicated that they believed that they were entitled to one. We certainly don't think there's any such thing as an equitable offset under the Sloan-Beverly Act's implied warranty provisions. And what was the other part of your question? I'm sorry, I realized I only answered half of it. What would a bench trial look like? It seems like an offset would have been just you take the two judgments and just subtract them, right? Or am I missing something? I'm not sure what the basis for the equitable offset argument would be. I assume that it had something to do with the use of the vehicle. But certainly the point of it would have been that we would have ‑‑ I'm not sure what the trial itself would have been. I mean, if what you're asking is whether there was a need for sort of just a legal determination, whether such an offset was needed, and whether there would be any kind of factual showing that would need to be tried by the judge, that I don't know. But certainly as kind of a threshold question of whether or not they're even entitled to such a thing under the implied warranty provisions of the Sloan-Beverly Act, there would have been briefing, there would have been argument, presumably, and the judge would have ruled on whether there even is such a thing as an equitable offset. I mean, one thing, even if you're right, one comment here is that this probably could have been clarified a little bit for the district court because there was some meet and confers, which is not clear to me that they were that productive heading after the verdict. And I'm just not sure the district court appreciated your position that we should enter judgment on the express warranty. We don't need to deal with this implied warranty at this time. We should see what happens with any JMO that Fort may file, and then we can return to the implied warranty. I understand your argument, but I also am somewhat sympathetic to the district court feeling like there was a lot of things flying around and it wasn't being presented clearly to him. Well, I think a couple things on that. I think certainly at the point that we got our verdict, the court asked if there was anything from our perspective that needed to be done, and we said from our perspective, no, we've proved our claim. And then we went on to say that if we can imagine that from Ford's perspective, that there might be some motion practice that it might want to go through on this equitable offset issue, but that we might be able to simplify things. At the point that Ford then files its objection to the proposed judgment that the court had directed us to propose, and Ford says, we think you've abandoned your claim, notwithstanding the fact that we obtained a verdict on the claim. Our response to that, I think, was pretty clear to the court in stating that we didn't think there was abandonment. There was essentially an election to recover under one of them, which had the effect of rendering this other stuff moot for the time being. Now, it's true that at that point, maybe we should have gone to the next step and said, well, if you disagree with us, then maybe there will be a need down the line, and court, you should, you know, Judge Roy, you need to make a determination as to whether or not you'd like to move forward with these, at this point, sort of hypothetical questions because, you know, we're recovering under the express warranty claim. But if you don't, it sort of provided sort of a roadmap. You're right that, you know, maybe at that point we could have provided a roadmap, but it wasn't our affirmative defense. It wasn't our assertion. It's not even affirmative defense. It wasn't our offset claim. So I don't think that whatever confusion is there, we should be sort of tagged with felt in it. I mean, it's not looking back on it. Not suggesting tagging. I'm more suggesting that I think there might have been a way to lay this out for the district court and to propose a sort of sequencing of decision-making that might have made this a little bit more straightforward in the district court. Might have had an easier time. That's certainly the case, that everybody could have sat down and said it. Now, I think the problem, what happened, I think, is that the judge sort of prematurely jumped at entering judgment against the plaintiff, and now sort of sent things in a direction. If the court had stepped back, as Ford said, well, you know, either enter judgment in our favor or set this for a bench trial on our equitable offset issue. And the court sort of chose option A and committed itself to that position. And at that point, it sort of took things off into left field a bit, because at that point now there's no purpose for a j-mall. The court sort of entered judgment on them on that claim. There's no kind of proceedings on an equitable offset issue, because the court sort of entered judgment for them on that claim. And so it sort of sent things off into left field. And sort of at each juncture along the way, the court sort of doubled down on that. We, you know, down the line filed our Rule 59 and 60 motion saying, well, now that the express warranty claim is off the table, you know, we think your dismissal of the implied warranty claim, at that point, that probably would have been kind of the last available law for it to steer things back. But I think kind of whatever the ideology of all of this, whatever the genesis of all of this was, the one thing that can be said is that the court did sort of the one thing it couldn't do, which was to enter judgment for Ford based on this notion that we had bindingly elected remedies away from a claim that we'd won. Yeah. And was having the two claims different in terms of the facts, the express versus the implied? What's the difference? Sure. So there's two different provisions under the Song-Beverly Act. These are sort of two different roads. One is this idea of express warranty claims where you have to present the car, you know, for a reasonable number of repair attempts. The damages are statutorily set amounts. The amount paid are payable on the vehicle minus a statutory deduction for the number of miles driven. The implied warranty claim is a different claim. It's a claim that basically kind of comes along with every purchase of a car. And the idea is that when you're sold a vehicle, you're promised that it's going to be like all the other cars on the road. It's going to be merchantable. It's essentially an implied warranty of merchantability. So if the vehicle is sold with defects that you don't even have to manifest in the first year, but in this case, for example, we proved that this power train, that this power shift transmission is a classically problematic thing, that you're entitled to damages that are not statutorily set. In this case, we sought essentially to unwind the lease. So the damages overlapped. But the proof of the claims is different. You don't have to show that you brought it in a reasonable number of repair attempts. So there's different elements to each claim. Question. If we agreed with you that the Quintaris did not abandon its implied warranty claim, is that enough to then just reverse the J. Moller? Do we have to do any additional finding after that? If the court concludes that the trial court erred by dismissing that claim, then there's no further findings. So we just remand for further proceedings consistent with the court's disposition. Well, didn't the trial court essentially say that it also dismissed the implied warranty claim on the merits based off of the lack of not contesting it under the local rules? Right. So there's two parts. The court did not say that I'd like to reserve one minute for rebuttal. So I'll keep an eye on that. We'll let you have time to do rebuttal. I appreciate that. So what happened at the point that the court grants that J. Moller is, first of all, when it actually granted the J. Moller, it only ruled on the express warranty claim. It says, well, they abandoned on the implied warranty claim. After the fact, we follow the rules 59 and 60 motions, the court comes back and says, actually, let me clarify. I actually granted also an implied warranty claim on the basis that you didn't oppose it. Right. So it doesn't reach in on the merits. Never says that there was insufficient evidence. Never meets the J. Moller standards. So two things. One, at the point that the court is ruling on that, it doesn't have anything before it to rule on. It had already granted, it already imposed judgment, it already entered judgment in Ford's favor on the claim. So issue is alive. Number two, at the point that it's doing that, it's not complying with the J. Moller standards. It's not saying there's insufficient evidence. Whatever the local rule is on whether or not you file an opposition, can't trump what Rule 50 says. And that's the Martinez case, which is a summary judgment case, but it basically says a local rule that says if you don't file an opposition, you can't kind of divest the court of its responsibility to actually comply with the statutory standards for causing a verdict. Right. So it sounds like, though, you're suggesting that we do need to go a step further than saying that the district court erred on the abandonment issue, that we also have to look at the J. Moll on the implied warranty. I think that the court doesn't need to do that because there was no active J. Moll at any point before the court. So, in effect, the court doesn't need to do that because the point that Ford filed its J. Moll motion, the court had already entered judgment for Ford. So there was no valid J. Moll motion before the district court at the point that it was ostensibly ruling on it as to the implied warranty claim. It had already entered judgment for Ford on the implied warranty claim. It has a rule that there was no active J. Moll on the implied warranty. Yeah, that's one way. Correct. That's one way the court could go. The court could also say that whatever happened there, the court couldn't allow a local rule to trump the J. Moll standards. It couldn't say. And, again, frankly, we did oppose. We filed an opposition, and that local rule just says if you don't file a document. Well, we filed a document that said we were opposing J. Moll. So, arguably, we didn't actually even fail to comply with the local rule. But the shortest distance between two points is certainly to say there was no active J. Moll before the court when it ostensibly ruled. I know we've taken you right to the end of your time, but I actually have another question for you. Has there been a ruling in this MDL on the legal validity of the implied warranty claim and then the set-off issue? Not that I know of. I actually don't know. Not that I know of. Okay, I'm trying to understand the significance of this appeal, because if we send it back, those rulings would presumably get made. And I'm trying to just understand what's at stake in this particular appeal, whether it's broader than just the Quintero's abandonment or whether this would then be poised to issue a ruling, the district court would issue a ruling that would then possibly be relevant to a host of other cases. I don't know the answer.  With that information, I don't want to shoot from the hip and give you in-depth information. Okay, we'll give you two minutes for rebuttal because we kept you on the run there, but let's hear from your opposing counsel. And I would appreciate a little bit of time for rebuttal so I can address any issues. We'll leave you two minutes. Thank you. Otherwise, I realize I'm at the end of my time, and so I will, of course, let my friend have his say. We will put two minutes on the clock for you. Mr. Chesney, good morning. May it please the Court. It's not Chesney. It should hardly be for the Court. I hope you can hear me. I had to walk off screen and hit the mute button. Your Honor, the plaintiffs made a conscious choice to stop litigating their implied warranty claim before the amount of damages had been determined and before they were entitled to judgment on that claim. That is not an election of remittance. It is an abandonment of an incomplete claim. The district court was well within its discretion to so hold, and it was certainly within its discretion to grant a motion for judgment that was unopposed in any form. So we think this Court should defer. Now, I'm happy to answer questions on anything the Court wants to discuss, but hearing none, I'll start, I think, essentially where Ms. Felton started, which is at least the first question that both parties have presented to this case, whether the plaintiff's actions constituted an abandonment or, as the district court held, or an election of remittance, as Plaintiff has argued, namely the spring. Here's how this Court has defined abandonment of a Breeding from Black America case. The Court said the party abandoned its claim when it has had a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes that issue from the case. That is precisely what the plaintiff's did with respect to, quote, the legal and the factual issue on Ford's deferred defense here. With respect to my colleague on the other side, it is not true, as Ms. Jo has been said, that the claim had been litigated to completion and all that was left was to choose between remedies. What was left, as the district court held in Virginia, again post-trial, was both a legal determination about the validity of this defense and then a factual determination about how to apply it in this case. Okay, let's try this again. Mr. Chesson, can you hear us? I can. Okay, good. That's going to make the argument go a little better. Well, Judge Press, just give us five more minutes. We almost have this settled. Yeah. We've been working these laps. No, I didn't. Judge Lasky, you played the role of waiting for the next act to come on stage, and we appreciate that, but it took us a little longer here. So, okay, Mr. Chesson, I do apologize for the technical difficulties. You have 12 minutes on the clock, but we're not going to hold you to that. I'm not going to reset the clock, but I want to make sure we have the full opportunity to hear your argument and to ask our questions. And so why don't I begin with where I was trying to get in, which is you recited the standard for abandonment, and I guess I'm having difficulty seeing the abandonment. It seems to me more like trying to have your cake and eat it too with the proposed judgment. The proposed judgment requested a judgment on the implied warranty claim. I agree with you that that claim was not litigated to completion, but the plaintiffs basically didn't think that was necessary. They had a verdict on the express warranty claim. That verdict was more money, and the proceedings on that weren't done either. You had more to say. Your client had more to say on that claim too, and he did, and you ended up winning on that. But from the plaintiff's perspective, I think they had a larger dollar amount on the express warranty, so I think their position was, why are we going to have all these additional proceedings on the implied warranty until we have the express warranty claim shake out? So why don't you respond? I certainly agree with much of your other characterization about at least what the plaintiffs were attempting to accomplish. And certainly I agree that they used, throughout this, they used the language of, we are simply electing a revenue. The judge's holding, which should have come as absolutely no surprise to the plaintiff, because it was the position that Ford had taken repeatedly, both throughout the meet and confer process, and then he had written proceedings before the court. What the judge held was the act of insisting that the remaining proceedings were moot, saying that the court should enter judgment without resolving these issues was a knowing relinquishment, a conscious relinquishment of a known right. And I've been speaking a lot, consciously, in the language of discretion. And I know there's a battle, and the reason there often is, about what this court's standard of review is, and the use of discretion is another one. Often those disputes are so many angels dancing on the head of a pin, but I think here it's a real, and it's substantive, the abandonment cases, the cases that we were just discussing, they talk about a judge's ability to deem a party's actions to be an abandonment, as growing out of the court's inherent authority to manage its docket. Mr. Osmond said we were solely concerned with judicial docket. I'm not a taker after a word, but I'm not. What would have happened if the plaintiffs had sent you a proposed judgment that said here's the judgment on the express warranty claim, and on the implied warranty claim, dismissed without prejudice, subject to further rulings on the express warranty claim? Is that abandonment too? We would be in a very different position. A lot of things that the plaintiff could have done, they could have asked for the judgment to be entered under Rule 54, the partial or final judgment. If they were truly interested in sequencing things, that would have been a safe way to do it, and that's what the parties did in that far west case that was discussed. This is what I'm trying to get at. Was the plaintiff's fatal move asking for too much in the judgment, and then all of a sudden that becomes, recharacterizes as an abandonment? It's not simply, I think it's similar to your question, because that's one of them, but it's not simply that. It's the position that they took in response to the objection. This was, as it was done since the 1990s, this was fully briefed before the district court, before this ruling was made, before it made its position clear. And the plaintiffs made their position clear. They said, we do not think any further proceedings on this claim are warranted. And where I was going before we had our unfortunate technological episode was this was an issue of consequence that could have been resolved early in the MDL with very little effort by either party. The legal question of whether this type of defense is available in this type of case had been briefed several times over the course of the pre-trial and mid-trial proceedings on jury instructions and on both parts that laid out their claims. All the evidence was in response to the question. And I think it was Mr. Clemente who posed this question. There wouldn't have been a better time, given all the witnesses that testified, the judge turned it off. All we were asking for was resolve this legal issue and apply it to the facts of this case, a case where the plaintiffs sought to revoke their lease six weeks before the end of the three-year lease. And for its contention in this case, which would have reverberated through an MDL with a thousand other cases, many of which have now been resolved without this issue having been adjudicated. Ford's position was even if you can approve a breach of an implied warranty to a jury, you're still not entitled to recover because you have received, but we're talking economically, not statutory, you have received the benefit of having possessed and used this car for three years. Is it your client's position that with the set-off, you would zero them out on the implied warranty claim? Yes. I don't know whether we would have prevailed on that or not. Nobody does. But that is the position that Ford would have taken. That is the position that Ford previewed throughout the trial and up to this point. My point is, and this is why I started talking about abuse of discussion, for us to know, if the concern from the plaintiff was truly nothing more than it's more efficient to do it this order rather than that order, maybe that's right, maybe that's wrong. Ford had a different position on what would have been efficient. That decision is efficient. What would have been more efficient once you got the verdict and then the express warranty claim had a higher dollar value? Why would it have been more efficient to litigate the implied warranty claim? I mean, it seems to me you'd want to litigate the express warranty claim and find out if there's any there or there. And if there's not, then turn to the implied warranty claim, which has less value to the plaintiffs. I understand the question. The answer is because this was a bail effort trial, and there was more at stake. I mean, the resolution of these issues than simply the contender's claim. And so my point is, with eyes open, the plaintiffs made a choice to take the position that no further proceedings were necessary because they were no longer pursuing a remedy for the breach of implied warranty. That was their right of judge. In the exercise of saying this is how I want to structure the litigation in this NPL, I have the discretion to say if you want to take that position, that position has consequences. And that decision by the district court is then reviewed by this court for abuse of discretion because of the nature of the decision that the court made. Did the district court set that out as that's the consequences of your election that you would be abandoning the implied warranty claim forever? It seems like it just kind of happened after the fact and everyone was surprised by it. I cannot imagine how the plaintiffs would have been surprised by it. I mean, I suppose to read a bit into your question, it's true that there was no oral argument on this function. So the judge, you know, the first words from the judge were, I'm holding this as abandonment. But the judge in Wisconsin had heard of this in her argument. I think the judge questions this too. The judge was picking Ford up on the suggestion that it made clearly in the briefs. Like the position was laid out before the court immediately after the verdict and then through the media confer process, which was documented and submitted to the court, and then in briefing where Ford said these are the two options. Either we proceed to finish this claim or the court should hold that it has been abandoned and we should move on and the court chose. And my point is the court had the discretion to do so. But why do you even want this? I mean, you would win this case, but your client wants a ruling on some key legal issues on the implied warranty. So it would seem to be what you actually wanted. You wanted to litigate this below. That was your first argument. And I think the answer is we wanted it at the time, which was two years ago when a lot of water has passed under the bridge. And I like this notice, but I'm not as up on the meetings and how much of the MDL has progressed in the last two years. But I have it under authority that the consequences of the decision now would be very different from the consequences of the decision had it been made two years ago when it was in the context of a trial that was designed to set precedence for further litigation in MDL. So that's our position on the abandonment issue. But, of course, it doesn't. In the two minutes or so I have left, I would like to touch on the second decision point here. Because I would tell you to ask, well, we disagree with you on abandonment. It's an over-added perspective. But I think the answer is no. There are two rulings on appeal here. And one of them is Judge Barra's decision to grant Judge Meade as a matter of law on this claim. And it is our position that he had the authority to do that at the time it was presented to him. And he had the authority to deem the complete lack of a response to be a violation of the local rule. You have to understand that the sequence of events here. At the time before the case was submitted to the jury, the court submitted a 50-day motion in which it moved for judgment on both of its claims, briefed them extensively. There was no response. It looked like the final call. We come back that often. We have a Russian trial who often don't submit a response at that point. Then it went to a verdict. Went forward, renewed, and was extraordinarily clear. It said, we understand that there has been this. I'm not even sure if you can read the language of this. I'm not sure that Judge Meade technically granted judgment before. It doesn't say there's judgment before. It's embodied in a document that says final judgment. But what the language actually says is the court is holding that this claim has been abandoned. So I'm not sure if it was final judgment before or in a judicatory ruling or whatever it was. For final judgment, it said, we are renewing our motion for judgment as a matter of law, because we have substantial grounds for doing so. And just in case the threshold ruling gets overruled, we would like the court to rule on this. The fact of the matter is that the court didn't have Article III jurisdiction to adjudicate that claim. And respectfully, I don't think that's how Article III jurisdiction works. A claim becomes moot for constitutional purposes. If intervening events mean that the plaintiff no longer has standing to bring a claim, the plaintiff is no longer injured, or the court lacks the ability to redress a wrong, the plaintiff is still claimed to have been injured by a breach of warranty. And if they were to prevail on their legal arguments, the court has the power to redress that injury. There's part of the III standard for jurisdiction for the district court to review the claim. I think you make good arguments here. I mean, I guess the more difficult part for you on this is that, especially in the order denying the plaintiff's motion to amend the judgment, the district court really does loop back to the earlier abandonment. And so I find it somewhat difficult to disentangle these two things and treat the JAMAL proceedings as wholly detached from the earlier finding that there was an abandonment. Here's how you can do it. I hear what you're saying, but I'll set this aside. Even if we give the plaintiffs a pass on the writing, which I don't think we should, if a motion was followed, I think they have nothing to respond to. There was a hue. It's in the supplemental excerpts and records, as I said, page 56, on the motion for judgment as a matter of law. Back here in the media, with the district court before any of my students, with the district court saying I've read the papers, I am inclined at the very least to grant a new trial, because I have grave concerns about the way the evidence came in this case, and I am seriously considering granting judgment as a matter of law. It then proceeds to ask very pointed questions of plaintiff's counsel about the sufficiency of the evidence on express warranty. Those are for 30 minutes. At no point during that hearing did this plaintiff ever say, wait, wait, if you're going to grant judgment on express warranty, then you have to consider our arguments with respect to bond warranty. So when you say the judgment is all tangled up, I agree, but I think Judge Barat's point was I was within my rights to construe this course of behavior from the plaintiffs, starting from the day of the verdict was entered, all the way through the hearing on JMOL. I'm entitled to construe that as the plaintiffs, for whatever their strategic reasons, are no longer pursuing these claims. And for the plaintiff to raise half their brief on appeal, to be making brand new arguments that they've never made in any form to the district judge, suggests that this is a change of course that shouldn't be counter-produced. So that's why I keep talking to the counselor. Let me see if my colleagues have any further questions for you. Okay. Okay. Thank you, Mr. Chesney. I'm not asking you to move to the court. All right. Apologies again. Ms. Tobisman, we'll be pleased to hear from you. Thank you, Your Honor. A couple things. The court absolutely put its finger on the issue on whether there was an, you know, did Judge Barat say, if you elected this remedy, you'll be abandoning the other remedy? No, he did not say that. All that happened in this case is that we submitted a judgment that the court directed us to present that stated what the jury did, which was that we'd won on both, and we were now having done that now. We were collecting under one. That's it. He says, well, there's this course of conduct. There's no course of conduct. Literally at that point, the court enters judgment in Ford's favor, and we're off to the races. The notion that way down the line, when Ford renews its Jamal motion, that we could have said or done anything that would have had any effect on this abandonment that the court had concluded had occurred months earlier is just kind of a chronological disconnect. But why wasn't anything raised to Judge Barat in that hearing? I wasn't in the hearing. I don't know what strategic, anything. Our view at that point was that the implied warranty claim was just gone, and, indeed, Ford had no business filing a Jamal motion that raised the implied warranty, and Judge Barat had no case or controversy. I mean, separate from kind of Article III standing, you're talking about whether or not, was there any remedy that Judge Barat could have offered them at that point that he hadn't already given them? No. He hadn't already entered judgment in Ford's favor months earlier. So I don't know what was said at that point, but I don't think that making or not making a legal argument in a Jamal hearing months later can have any effect on whether or not, and the standard is an intentional relinquishment of a known right with knowledge of the facts. At the point that we submitted a proposed judgment, that was sort of the original sin in this case, was that we had submitted a proposed judgment that said we're going to elect to recover under one of two remedies that we agreed was overlapping. That was the original sin. That's a known relinquishment. At that point, we had every reason to believe that the express warranty claim was going to hold up. The court, let's remember, sat on the Rule 50A motion that was made during trial. It doesn't get around to ruling on it until after the jury delivers its verdict, says, I've now considered that first Jamal motion. I deny it. So we have every reason to believe that it's going to hold up. Ford isn't. We've let you go a little over, but I'm going to check with my colleagues to see if they have questions. Okay. I want to thank you, Ms. Dobson and Mr. Chesson. I want to thank you as well. We very much appreciate the arguments in this case,  Thank you, Your Honor.
judges: BRESS, BUMATAY, Lasnik